**Application of George Cruise MULLIN et al.**

**Patent Appeal No. 8905.**

United States Court of Customs and Patent Appeals.

Aug. 16, 1973.

Charles M. Hogan, Cincinnati, Ohio, Abraham Ogman, Peabody, Mass., attorneys of record, for appellants. Morris Fidelman, Fidelman, Wolffe, Leitner & Hiney, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. John W. Dewhirst, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection of claims 1–5 and 12 of appellants' application [1] for "Abrasive Article And Method For Its Production." Claims 1–5 were rejected under 35 U.S.C. § 102. Claim 12 was rejected under 35 U.S.C. § 103. We affirm the rejection of claims 1–4 and reverse as to claims 5 and 12.

---

1. Serial No. 762,315 filed September 16, 1968.

## Invention

Appellants' invention is best considered in light of the claims involved in this appeal. They are set forth below:

1. An abrasive device having a surface deposit comprising an accumulation of fluorocarbon particles covering at least that portion of the surface not covered by the abrasive particles.

2. An abrasive device as described in Claim 1 wherein the deposit comprises a plurality of layers of fluorocarbon particles.

3. An abrasive device as described in Claim 1 wherein the deposit is a loosely applied accumulation of particles.

4. An abrasive device as described in Claim 1 wherein the deposit is an accumulation of particles utilizing Van de Waals forces as a bonding means.

5. An abrasive device as described in Claim 1 in which the abrasive device is a coated abrasive and the ratio of the fluorocarbon to abrasive particles on the surface is ⅛ to ½ by weight.

12. A treatment for an abrasive article comprising a substrate containing abrasive particles bonded to the substrate, said treatment comprising a coating of an accumulation of fluorocarbon particles bonded to each other and to the substrate by means of a surfactant.

Appellants' specification broadly states that the invention involves abrasive articles such as abrasive belts or grinding wheels that have a surface deposit or coating made up of an accumulation of fluorocarbon particles. These particles can be loosely or densely compacted on the article's surface. Use of the coating is said to extend the useful lifetime of the article and to improve grinding efficiency.

The fluorocarbon particles can be applied in at least three ways. In one disclosed method the abrasive device is precoated by spraying it with a dispersion or suspension of fluorocarbon particles in a suitable medium. Water is one such medium. A surfactant is usually included in the medium and functions to bind the particles together after the medium is removed by evaporation. A suspension of fluorocarbon particles without a surfactant can be used if the particles are of such a size that so-called Van de Waals forces are set up between them which binds them together.

In an alternative approach, the abrasive article can be sprayed during use to maintain the fluorocarbon coating. In yet another method, as the abrasive article works it can be contacted by a source of solid fluorocarbon in a manner which removes particulate fluorocarbon and deposits it on the abrasive article. Each of these last two techniques are referred to in the specification as a "dynamic coating process."

The specification states that best results can be obtained under the following conditions:

For abrasive belts, or similar single layer abrasive articles, where the treatment is applied to the surface before use, the optimum ratio of fluorocarbon to abrasive grain is in the range of ⅛ to ½ by weight. When the treatment is applied during the grinding process by moving the abrasive article over a solid fluorocarbon member or by continuously spraying the ratio of fluorocarbon consumed compared to abrasive loss established as effective is within the range of 0.8 to 1 to 6 to 1 by weight. If the amount of fluorocarbon applied is below the stated minimum, there is a sharp drop-off in performance, particularly with regard to life. On the other hand, if the amount of fluorocarbon exceeds the stated maximum, there is a sharp drop in performance due primarily to the glazing over of the grinding surface by the fluorocarbon. The material flows over the grinding surface and covers the grains of abrasive to such an extent that it interferes with the abrading action.

### The Reference

All the claims involved in this appeal were rejected as being anticipated by or obvious in view of a single reference, a patent[2] to Haigis et al. (Haigis).

Haigis discloses an abrasive article and its method of manufacture. The article is made by applying a coating of a particulate fluorocarbon resin to the article and curing the resin to form a "continuous coating." The resin can be applied as a dispersion in water, for example, by spraying, dipping or rolling. When this technique is used, the fluorocarbon resin is cured by sintering it at a temperature which will form the continuous coating.

In the alternative, the fluorocarbon resin can be combined with a thermosetting resin and applied to the abrasive article. When this is done, curing is carried out by heating the article to a temperature at which thermosetting occurs and the thermoset resin forms a matrix for the fluorocarbon particles.

### Rejection Under Section 102

Claims 1–5 were rejected as being anticipated by Haigis. In the board's view, the coating formed by Haigis as an intermediate to the sintering step was precisely the same as that defined in claims 1–5. The board recognized that this intermediate coating was not intended to be used for grinding purposes. In this regard the opinion states:

> The fact that the reference then goes on to sinter or cure the coating does not detract from the disclosure of this reference of as much of the claimed subject matter as is recited in these claims. It is clear that at the point in the process of the reference prior to sintering or curing, the abrasive device of the reference satisfies the limitations recited in these claims.

Appellants concede that claims 1–3 read upon the intermediate coating of Haigis that is to be sintered rather than thermoset. However, it is their view that this intermediate structure constitutes an "accidental" and "unwitting" duplication of their invention which has no recognized utility other than as an intermediate. For this reason, they argue that its description in Haigis cannot be regarded as a reference against their claims.

We disagree. The question of whether or not a reference can be regarded as prior art that describes a composition or structure as being an intermediate has been resolved in this court adverse to appellants' position. See In re Herbert, 461 F.2d 1390, 59 CCPA 1091 (1972).

In that case a reference described a "double emulsion" which was an intermediate in a process comprising several steps. The Patent Office relied upon its description as a reference against appealed claims. Concerning the propriety of this, the court said:

> We agree with the solicitor that the fact that the double emulsions disclosed in the reference are only intermediates formed during the production of the products with which the reference is ultimately concerned does not detract from the efficacy of the British patent as a reference.

In support of their position, appellants cite a number of cases including two decisions of the Supreme Court, Tilghman v. Proctor, 102 U.S. 707, 26 L.Ed. 279 (1880) and Eibel Process Co. v. Minnesota and Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923). In our view these cases are not inconsistent with our decision here. At 261 U.S. 66, 43 S.Ct. 329 the Supreme Court in the *Eibel Process* case, speaking of alleged anticipation, said:

> * * * accidental results, not intended and not appreciated, do not constitute anticipation. Tilghman v. Proctor, 102 U.S. 707, 711 [26 L.Ed. 279] [other citations omitted].

Assuming that the Congressional reenactment of the patent statute in 1952 can be regarded as having incorpo-

2. U.S. 3,042,508 issued July 3, 1962.

rated the substance of this decision into section 102, we see no conflict between our decision and the Supreme Court. This is true because, if for no other reason, the intermediate structure of Haigis was both intended and appreciated. It matters not one whit that it was intended to be and appreciated as being an intermediate structure rather than an end use item.

Such is frequently the case with chemical compositions. Some are patentable because they cure disease. Others may be patentable because they are valuable intermediates in the preparation of compounds that cure disease. Certainly it cannot be said that the discovery of an end use for a compound having recognized utility as an intermediate means that a novel compound has been discovered. No different result is required here because the intermediate is an article of manufacture rather than a chemical compound.

Even though Haigis can be regarded as a reference, there remains the question of whether it anticipates all the claims in question. However, in view of appellants' admission, we need not consider this point with regard to claims 1–3. No similar admission was made with respect to claims 4 and 5.

We affirm the rejection of claim 4 wherein the coating is defined as "an accumulation of particles utilizing Van de Waals forces as bonding means." Regarding such a coating, appellants' specification merely states:

> A surface was also treated with a coating of a colloidal suspension, Dupont T-42, lacking a surfactant. The coating integrity is preserved by an effect known as Van de Waals forces acting on *judiciously sized particles*. [Emphasis ours.]

The only dimensions given in the specification for any particles is that they be submicron sized. By comparison, Haigis employs a dispersion of fluorocarbon particles less than one micron in size, in other words submicron in size. Therefore, in the absence of contrary ev-idence, we are forced to conclude, as the solicitor suggests, that the Haigis coating before sintering must possess Van de Waals forces.

■ Claim 5 is another matter. It calls for a device wherein "the ratio of fluorocarbon to abrasive particles on the surface is ⅛ to ½ by weight." Again by comparison, the coating in Haigis is described according to its *thickness* and this must be at least 0.1 mil but not more than 1 mil. However, Haigis is silent as to the weight ratio of fluorocarbon to abrasive particles.

On this record, we see no way of equating the different quantitative criteria used by appellants and in Haigis, i. e., weight ratio vis-a-vis coating thickness, in order to determine whether a coating 0.1 to 1.0 mil in thickness would have a weight ratio of fluorocarbon to abrasive particles within the claimed range. In our view the Patent Office has failed to establish that the Haigis coating anticipates that of claim 5. Accordingly, the rejection of claim 5 must be reversed.

The solicitor has objected to appellants' raising for the first time on appeal the argument that claim 5 can be distinguished from Haigis because the latter sets forth no weight ratios. This argument is not well founded. Appellants have consistently argued that the specific limitations of the dependent claims are not present in Haigis and have responded to whatever grounds were raised in the Patent Office in support of the rejection. With regard to claim 5, appellants here are merely responding to the board's treatment of their contention on petition for reconsideration.

■ We think it is incumbent upon the Patent Office in the first instance to set forth clearly why it regards a claim to be anticipated, obvious or otherwise defective. A broad statement such as that appearing in the first Office Action of this case that simply states "Claims 1–5 are rejected as obviously anticipated by Haigis et al. under 35 U.S.C. § 102"

does not necessarily inform an applicant of the reason his claims are regarded as defective. Patent Office Rule 106 requires that "The pertinence of each reference, if not apparent, must be clearly explained * * *."

That the basis of the rejection was ambiguous in this case can be seen by the course of prosecution. In the first instance, the examiner based his rejection on the *final cured* coating described in Haigis. Appellants pointed out that their coating differed from this. It was the board that first suggested that the intermediate coating was the basis for the rejection. Therefore, we believe appellants were within their rights when they point here to possible error in the *board's* rejection.

### Rejection Under Section 103

Claim 12 requires that the abrasive device be treated with a coating of fluorocarbon particles bonded to each other and the substrate by means of a surfactant. The examiner and the board were of the opinion that this treatment was obvious in view of Haigis. We disagree. The intermediate coating of Haigis was intended to be transitory. Therefore, there was no requirement that it have sufficient integrity to withstand the grinding process itself. However, this is a requirement that must be met by appellants' coating.

The integrity of the Haigis coating is supplied by either surrounding it with a matrix of a thermoset resin or by fusing the fluorocarbon particles to form a continuous coating. Furthermore, there is no indication in Haigis that the intermediate coating can itself be used as a grinding aid. Accordingly, we are of the view that there is no suggestion in the reference that any benefit could be achieved by using a surfactant in the intermediate coating. In view of the subsequent processing, a surfactant would appear to be superfluous.

The board considered, erroneously we think, the description of the intermediate coating which includes a thermosetting resin to be a sufficient basis for the rejection under section 103. That coating is applied with water and a water-miscible solvent "comprised of aromatics and aliphatic alcohols." In view of this, the board said:

> Even the water-miscible solvents employed in the dispersion, such as the alcohols, may broadly be regarded as surfactants. We, accordingly, do not consider that the claimed treatment patentably distinguishes, if at all, over the disclosure of the reference.

There is no basis for the board's conclusions. Haigis clearly points out that the solvent is evaporated before curing. Therefore, it cannot be concluded that the intermediate coating would contain any solvent component that might function as a surfactant. If anything bonds the resin particles in that intermediate coating it would have to be the uncured thermosetting resin which cannot be regarded as a surfactant.

For the foregoing reasons, the rejection of claims 1–4 is affirmed. The rejection of claims 5 and 12 is reversed.

Modified.