**Application of William John HERBERT.**

**Patent Appeal No. 8664.**

United States Court of Customs and Patent Appeals.

June 29, 1972.

Affirmed.

Jacobs & Jacobs, New York City, attorneys of record, for appellant; Albert L. Jacobs, Jr., New York City, of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner for Patents; Fred E. McKelvey, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and MALETZ, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 11–13 and 15–24 [1] in appellant's application serial No. 667,611, filed September 13, 1967, which appellant contends is entitled, under 35 U.S.C. § 120, to the benefit of the October 19, 1964, filing date of his application serial No. 404,972 of which this is said to be a continuation, and, under 35 U.S.C. § 119, to the benefit of the October 25, 1963, filing date of his British application No. 42210/63. We affirm.

### The Subject Matter Claimed

Claims 11–13 and 15–21 are drawn to multiple emulsions in which the outermost phase is an aqueous solution, an intermediate phase consists of mineral or vegetable oil, and the innermost phase is an aqueous solution containing antigenic material. Claims 22–24 are drawn to a process for producing such multiple emulsions. We reproduce claims 11 and 22, with subparagraphing supplied, as illustrative:

11. An injectable antigen-containing multiple emulsion composition

which has prolonged stability upon storage,

which is mobile upon injection and

which has the outermost phase aqueous to give the composition a water-like viscosity,

the said emulsion having its continuous phase aqueous and its primary disperse oil phase enclosing an aqueous phase containing antigenic material,

said oil being a therapeutically acceptable purified mineral oil or purified vegetable oil,

said composition being immunologically effective.

22. A process for the preparation of a stable, mobile, injectable antigen-containing composition in which

a water-in-oil emulsion having a continuous oil phase and a dispersed aqueous phase containing antigenic material is re-emulsified in an aqueous medium in the presence of a parenterally acceptable emulsifying agent of the type favoring the formation of oil-in-water emulsion

whereby a multiple emulsion is obtained in which the continuous phase is aqueous and the primary disperse phase is an oil phase which encloses an aqueous phase containing antigenic material,

the oil being a therapeutically acceptable purified mineral oil or purified vegetable oil.

The other claims add various limitations concerning particle size and specific antigens. While appellant's reply brief emphasized that his claims "are of varying scope and do not stand or fall together," he has failed to point out what relevance the additional limitations have to the patentability of the narrower claims, and we see no such relevance; accordingly, we agree with the solicitor that they do "stand or fall together."

According to appellant's specification,

It is known to prepare vaccines in the form of water-in-oil emulsions in which the antigen is contained within the aqueous disperse phase and such adjuvant vaccines are used now both in the medical and veterinary fields. Adjuvant vaccines are frequently preferred to the simple vaccines in the

---

1. Appellant also appealed from the rejection of claim 25 but withdrew this appeal prior to oral argument.

form of an aqueous solution or suspension of antigen because it is possible to achieve the desired immunological effect with a smaller amount of antigen. However, adjuvant vaccines in the form of water-in-oil emulsions are extremely viscous liquids and are not in practice packed in multi-dose containers because of the difficulty in extracting such emulsions from the container. Consequently, adjuvant vaccines in this form are usually distributed in disposable syringes or syringe inserts but the use of such disposable items is expensive.

It has now been found that the viscosity problems associated with water-in-oil emulsion vaccines can be overcome and the need for disposable containers avoided if the adjuvant vaccine is prepared in the form of a multiple emulsion. * * *

* * * * * *

Mineral oils are non-metabolisable and in the case of the known water-in-oil emulsion vaccines a depot of vaccine tends to remain at the site of the injection just below the skin and this often causes the subject some discomfort. In the case of the multiple emulsion compositions, however, the oil is dispersed in the continuous aqueous phase and becomes quite rapidly dispersed in the subject's body.

In compliance with the how-to-make requirement of the first paragraph of 35 U.S.C. § 112, appellant's specification states that "Any of the well-known methods of preparing emulsions may be used to produce the compositions of the invention," and it then describes several.

2. The British patent states that:
The term "coacervating colloids" refers to naturally occurring gelable and non-gelable hydrophilic colloids and examples of the coacervating colloids are gelatin, agar-agar, albumen, alginates, casein, pectins, acacia starch, fibrinogen starch acetate phthalate, cellulose acetate phthalate and amylose acetate phthalate and collagen.
and that:

*The Reference*

The sole reference is British patent No. 929,403, the specification of which was published June 19, 1963. It discloses water-in-oil emulsions encapsulated in gelling media. According to the specification,

* * * the novel products hereof are prepared by first forming a primary hydrophilic liquid-in-oil emulsion (the oil being a lipophilic liquid) containing an anti-inversion agent in the oil phase to prevent the inversion of the said emulsion. The said primary emulsion is then dispersed in an aqueous dispersion of at least two coacervating colloids,[2] at least one of which is gelable and at least one of which is an isoelectric colloid, at a temperature above the gel point of the said gelable colloid. Dilution of the resulting double or secondary emulsion with water or adjustment of the pH causes the coacervate to deposit about the particles composed of the primary emulsion.

It is on the secondary emulsion that the Patent Office relies here. Concerning it, the reference states:

* * * the secondary emulsion exists during the interval between the first contact of all ingredients in the coacervating medium and the actual formation of the coacervate. The secondary emulsion is a double emulsion consisting of particles of the primary emulsion as the internal phase dispersed in the coacervating medium as the external phase. If the primary emulsion is added to the aqueous solution of the coacervating colloids, the

* * * the term coacervation * * * relates to the process by which the liquid colloidal concentrate or coacervate is formed as a phase entity of the initial sol or solution. In its practical aspect, and as employed herein, coacervation relates to the process by which foreign materials present in the sol when the coacervate is formed are enveloped or encapsulated by the coacervate.

double or secondary emulsion will persist until dilution of the sol with water is carried to the point at which coacervation occurs.

It indicates that the two inner phases can contain a wide variety of active ingredients, the selection of which is limited "only by the solubility, suspending characteristics· or compatibility of the active ingredients in both phases." Among the examples given are vitamins and pharmaceutical materials, and it is stated that "Such materials can be enclosed in coatings suitable for oral, topical or injectable use by regulation of the particle size and coating thickness, permeability and hardness or by selection of coacervating components." However, antigenic materials are not among the active ingredients expressly listed.

### The Rejection

The examiner rejected all of appellant's claims under 35 U.S.C. § 103 as obvious in view of the British patent. The rejection was stated as follows in his answer:

This reference teaches injectable compositions comprising the active ingredient in water, which water is emulsified in oil with the aid of an emulsifying agent, and which water-in-oil emulsion is in term [sic; turn?] emulsified in an aqueous composition. To prepare an injectable composition comprising an active ingredient in water, which water is emulsified in oil, and which oil is emulsified in an aqueous composition, is doing that which is taught by the reference. The choice of antigens or particular antigens as the active ingredients to be employed is a matter well within the purview ·of those skilled in the art since it is conventional to administer antigens by injection. The selection of the optimum size of the dispersed phases is likewise seen to be a matter well within the purview of the artisan. Likewise, nothing patentable is seen in the claimed method of making the final compo-

sition since the reference teaches first preparing a water-in-oil composition in which the active ingredient is dispersed in the water phase and then dispersing this primary dispersion into an aqueous composition.

The board treated the above as two separate rejections, one of all claims for obviousness, and one of claims 22–25 "as being for the obvious method of preparing the final product." It sustained both. Concerning the first ground, it agreed with the examiner that the British patent's "coacervating colloids are not excluded from appellant's outermost aqueous phase as defined by the claims on appeal," and it rejected appellant's argument that the British patent does not disclose a "true double emulsion." Appellant had based the latter contention on the argument that the double emulsion referred to in the reference has only a "transitory life," whereas appellant's claims all require stability, but the board noted that the British patent teaches that the double emulsion "persists," indicating that it would last indefinitely if not further treated. Concerning the second ground, the board stated:

The only step specified by claim 22 (the only independent method claim) is the re-emulsification of the water-in-oil emulsion. There is nothing unobvious in such a step regardless of possible novelty in the final product hence the rejection is sustainable. In re Neugebauer et al., 51 CCPA 1138, 330 F.2d 353, 1964 CD 568, 806 OG 935, 141 USPQ 205.

### The Parties' Arguments

Appellant argues that his product claims define water-in-oil-*in-water* emulsions and methods of making the same and thus do not read on the water-in-oil-*in-coacervating-colloids* emulsions and methods taught in the reference. He argues that "The coacervating medium of the British patent contains gelable material" and that "one would clearly never realistically conceive of injecting into a human or animal a material

which would gel either during the course of injection or thereafter." Appellant also again argues that the British patent is an inappropriate reference because the double emulsion which it discloses is "transitory."

Concerning the obvious-method rejection, appellant argues that it was improper because it cannot be obvious how to prepare a product which is itself non-obvious. He appears to admit that it would have been obvious how to make his products *given the products themselves* but urges that his products cannot be used as prior art against his process claims because they are disclosed in the same application. He also argues (1) that rejection on this basis is inconsistent with In re Tarczy-Hornoch, 397 F.2d 856, 55 CCPA 1441, (1968),[3] (2) that it is completely lacking in any statutory basis, and (3) that it is illogical because it leads to the anomalous result that the process claims are unpatentable if the product claims are presented, but are patentable if they are not.

The solicitor argues that "the instant claims do not limit the outermost aqueous phase solely to water" and that they are therefore too broad in the sense of 35 U.S.C. § 103. Additionally, he argues that this court rejected a "transitory intermediate" argument very similar to the one appellant makes here in In re Fried, 329 F.2d 323, 327–328, 51 CCPA 1118, 1123 (1964), and that "there is nothing in this record which would establish that the secondary emulsion [disclosed in the reference] is not injectable."

According to the solicitor, the obvious-method rejection was "under § 112" but he does not specify what language in § 112 he thinks supports such a rejection. However, it does not appear to make any difference to him whether there is any statutory support for the rejection because, according to him, the rejection was superfluous anyway:

Since the rationale upon which the § 112 rejection of claims 22–24 is based is the obviousness of the sole claimed step, both the § 103 and § 112 rejections of claims 22–24 stand or fall together. If the Court finds that the claimed subject is obvious under § 103, it becomes unnecessary to consider any rejection based on § 112. On the other hand, should the Court find that the claimed subject matter is not obvious under § 103, it is manifest that the claimed subject matter could not be drawn to an obvious method and therefore the rejection based on § 112 would fail.

## OPINION

■ We agree with the solicitor that the fact that the double emulsions disclosed in the reference are only intermediates formed during the production of the products with which the reference is ultimately concerned does not detract from the efficacy of the British patent as a reference. In *Fried* we turned aside such an argument on the ground that Fried had produced no evidence "to suggest that it is beyond the skill of a chemist to alter the reaction conditions and isolate the disclosed intermediate." See also, In re Sheppard, 339 F.2d 238, 241–242, 52 CCPA 859, 863–864 (1964). Here, the reference states unequivocally that "the secondary emulsion *exists* during the interval between the first contact of all ingredients in the coacervating medium and the actual formation of the coacervate" and that "the double or secondary emulsion *will persist* until dilution of the sol with water is carried to the point at which coacervation occurs." (Emphasis ours.) Appellant has offered no proof that these statements are incorrect, so we must assume that they are correct. Hence, there is no isolation

3. In In re Susi, 440 F.2d 442, 444, 58 CCPA 1074, 1076 n. 1 (1971), we noted that the parties had raised, but that we did not reach, "the interesting issue * * * of the continued validity of In re Larsen, 292 F.2d 531, 49 CCPA 711 (1961), in view of In re Tarczy-Hornoch * * *." Larsen was the basis of this court's holding in In re Neugebauer, cited by the board.

problem, and the result here follows a fortiori from *Fried* and *Sheppard*.

We also agree with the solicitor that appellant's claims appear to read on the outermost aqueous phase of the secondary emulsion disclosed in the reference patent. Although appellant argues that "Claims 11–13 and 15–21 define an injectable water-in-oil-in-water emulsion," all but one of these claims actually recite that "the outermost" or "the continuous" phase is *aqueous*. The single exception is claim 15, which recites that the claimed composition "is in the form of a water-in-oil-in-water emulsion in which the continuous phase is aqueous * * *." While this language is somewhat ambiguous, we think that the express recitation that the continuous phase "is aqueous" outweighs the composite adjective indicating that the continuous phase is water and that claim 15 should accordingly be read no more narrowly than the others in this regard. Hackh's *Chemical Dictionary*, 3d Ed., 1944, defines "aqueous" simply as "Watery" and an aqueous solution as "A solution prepared with water as the solvent." Dorland's *Medical Dictionary*, 24th Ed. 1965, defines aqueous as "Watery; prepared with water." The reference refers to the continuous phase of the double emulsion which it discloses as "the aqueous solution of the coacervating colloids," and we see no reason to read appellant's claims narrowly to exclude such aqueous solutions. Compare In re Prater, 415 F.2d 1393, 1404–1405, 56 CCPA 1381, 1396 (1969), and In re Finsterwalder, 436 F.2d 1028, 1032–1033, 58 CCPA 871, 876 (1971).

Appellant's best argument is that the recitation that his double emulsions are "injectable," which appears in every claim, excludes aqueous solutions of the type taught by the reference patent, since "one would clearly never realistically conceive of injecting into a human or animal a material which would gel either during the course of injection or thereafter." He repeats this argument several times in various forms. However, the reference states that "pharma-

ceutical materials * * * can be enclosed in coatings suitable for oral, topical or *injectable* use by regulation of the particle size and coating thickness, permeability and hardness or by selection of coacervating components." (Emphasis ours.) Granted, this disclosure refers to the coacervate itself, not to the secondary emulsion, as the examiner implied. However, if the coacervate itself is injectable (and appellant has not controverted this teaching), it would certainly seem that the secondary emulsion formed prior to coacervation would be. Accordingly, we hold that appellant has failed to prove on the present record that his recitation that his multiple emulsions are "injectable" inherently excludes double emulsions of the type taught in the British reference. Cf. In re Mraz, 455 F.2d 1069, 1072–1073, 59 CCPA ——, —— (1972).

For the foregoing reasons, we *affirm* the rejection of all claims as reading on obvious subject matter, and we therefore do not reach the additional rejection of claims 22–24 as drawn to the obvious method of making the product. The appeal is *dismissed* as to claim 25.

Affirmed.

59 CCPA