**Application of William Garrett BURCKEL.**

**Appeal No. 78–616.**

United States Court of Customs and Patent Appeals.

March 1, 1979.

C. Wayne Stephens, Wilmington, Del., for appellant; Hoge T. Sutherland, Los Angeles, Cal., of counsel.

Joseph F. Nakamura, Washington, D. C., for Commissioner of Patents; Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) affirming the examiner's rejection of claims 1–3 and 6 under 35 U.S.C. § 103 in application serial No. 511,-028, filed September 30, 1974, entitled "Product." We affirm.

## The Invention

Appellant's invention relates to fiber blends, yarns, and fabrics for use in lightweight garments offering protection against brief exposure to "extreme thermal fluxes"—in lay terms, fire. The fiber blends comprise a mixture of two different types of fibers in staple form, one of which melts in the presence of a high thermal flux (hereinafter A–fiber), and one of which exhibits considerable strength under similar conditions (hereinafter B–fiber). Claim 1 is illustrative:

1. An intimate blend of organic staple fiber components comprising at least about 15% by weight of a first fiber component which in fabric form will meld or fuse within 10 seconds during exposure to a heat flux of 2 cal./cm. $^2$/sec. and from about 3–20% by weight of a second fiber component which in fabric form exhibits a flame strength of at least 20 mg./den.

for at least 10 seconds during exposure to a heat flux of 2 cal./cm. $^2$/sec.

The other three claims are dependent.

## The Reference

Of the several references cited against the application, the only one having a bearing on this appeal is U. S. Patent No. 3,628,-995 issued December 21, 1971, to Economy et al. (Economy). Economy teaches that flame-resistant fabrics can be made from synthetic fibers prepared from resin condensation products of phenols and aldehydes, and that it is possible to blend such fibers with other fibers such as wools, silks, polyamide fibers, polyacrylonitrile fibers, mineral and glass fibers, fluorocarbon fibers, and chemically-treated cotton and rayon to produce such fabrics. The use of at least 35% by weight of the first-mentioned fibers is preferred, but Economy states that "Even small percentages of phenolic fiber will eliminate the dripping of molten polymer encountered in the burning of some fabrics." Although Economy prefers to add the more flammable fibers as corings in yarns, he states that "they can either be added as staples prior to the picking operation, introduced as a core yarn or during weaving as warp or fill." Similarly, the use of both continuous strands of fiber and staple fiber is taught. Especially relevant here is the teaching that "By blending with special polyamides and polyacrylonitriles, the wear resistance of the fabric can be increased. Even though the polyamides have a tendency to melt, the structure provided by the phenolic fibers will retain the melt in place until it chars."

## The Rejections

The examiner held the subject matter of the appealed claims unpatentable as obvious under § 103 from Economy. In the examiner's letter of January 12, 1976, he stated:

Economy teaches a blend of two staple fiber components. Column 4, lines 4–31 teach various blends of staple fibers that exhibit flame strength. Column 4, lines 13–31 recognizes that said blend will fuse or melt as desired by applicant. The

examiner does not agree with applicant who asserts that the only suggestion as to the quantity of phenolic fibers to be used in the blends of Economy, is that the fabric should contain at least 35% by weight phenolic fibers. Column 2, lines 25–35 of Economy recognize the 35% limitation as a preferable amount, and implies the lower percents would function effectively. In view of such a disclosure, no patentable distinction has been set forth between the cited reference and the claims as presented.

In an attempt to overcome the rejection, applicant submitted an affidavit under Rule 132. The affiant, Robert S. Chapin, a senior research engineer at E. I. du Pont de Nemours and Company, the real party in interest here, stated that he had performed the flame strength and fabric break open tests described in appellant's specification using (a) a fabric blended from 15% phenolic fiber staple and 85% cotton; (b) a fabric blended from 15% phenolic fiber staple and 85% amorphous poly($m$-phenylene isophthalamide); (c) a 100% phenolic fiber fabric; and (d) a 100% cotton fiber fabric. According to affiant:

The tests show that the flame strength of the cotton fabric was increased 1.8 mg/d (150%) by blending with 15% "Kynol" [the phenolic fiber] while the flame strength of amorphous poly($m$-phenylene isophthalamide) was increased 4.4 mg/d (1467%) by blending with 15% "Kynol." The break open time of the cotton fabric was increased by 33 seconds (183%) by blending with 15% "Kynol" while the break open time of poly($m$-phenylene isophthalamide) increased 229 seconds (4872%) by blending with 15% "Kynol".

In the final rejection of June 21, 1976, the examiner adhered to his position based upon Economy. He stated:

It is within the scope of Economy et al to blend phenolic staple fibers, with fibers such as polyacrylics, polyesters, and polyamides, as desired by applicant. Economy et al, recognizes the desirability of the formation of a flame-resistant blend of organic fibers which will fuse or melt as desired by applicant. Col. 2, lines 25–35 recognizes 35% by weight of phenolic fibers, as a preferred amount, and recognizes lower percents with [sic, which] function effectively for the desired end-results. In view of such a disclosure it is not seen how the claims patentably define over the cited reference.

The examiner found the affidavit to be unpersuasive:

The affidavit submitted by applicant under Rule 132 has been considered but is not persuasive towards the patentability of the above rejected claims. The showing is not commensurate with the scope of the protection sought. Furthermore, Economy et al does not limit the disclosure to a blend of phenolic resins plus cotton. Nor does the examiner base the rejection on the said blend, but on the teaching that phenolic resins, when combined with specific groups of fibers, do impart the properties desired by applicant.

Since applicant's claims embrace the blends of Economy et al, [it] is not seen how a showing alleging improved results over a specific "Kynol"/cotton yarn blend would negate the obviousness of Economy et al.

The board affirmed the rejection of each of the claims. In response to appellant's argument that to find the claimed invention in Economy one must pick blends of staple fibers rather than continuous strands, the board noted that Economy teaches the use of both fiber types. The board met the argument that only one of the three blending techniques taught by Economy would produce the claimed blends by deeming the term "intimate blend" as used in the claims to be "broad enough to encompass blends prepared according to any of the blending techniques described in the reference," and was of the opinion that no evidence of record demonstrated that blending in any particular manner yielded any unobvious results.

With respect to appellant's assertion that the tests in his specification showed that the claimed blends containing from 3–20%

by weight phenolic fiber exhibit unexpectedly superior results in resisting break-open over the blends of Economy containing the preferred 35% by weight of phenolic fiber, the board found the test results flawed by the test procedures:

We have carefully considered this data but do not find it sufficient to support appellant's position. It is apparent from run 6 in Table IB that an unaltered woven fabric consisting of only the B fiber has a flame strength of 126.0 mg./den. However, the flame strengths shown for the "residues" in runs 2 to 5 are for woven fabrics which have been materially altered. For example, in run 2, 95% of the initially woven fabric has been dissolved away prior to testing the "residue" for flame strength. Even though this "residue" consists of B, as does the fabric in run 6, it is obviously a very loosely woven mass weakened substantially as a result of the treatment with the dimethylacetamide. The very low flame strengths shown for such fabrics is understandable. Therefore, the flame strength values of the unaltered Blend Fabrics and those of the residue fabrics are not directly comparable in view of the physical differences which obviously exist between the fabrics being compared.

The data in Tables IA and IIIA merely establishes that as the percentage of the B component increases, the flame strength increases. Such is clearly expected in view of the disclosure in Economy et al. It is not seen wherein this data reflects an unexpected improvement when B is present in the 3 to 20% weight range.

The board agreed with the examiner that the Chapin affidavit was insufficient to rebut the prima facie case of obviousness. The board noted that the Economy disclosure was not limited to the phenolic/cotton blends tested by appellant against his claimed blends, and further noted that Economy clearly teaches "blending the phenolic fibers with polyamides and polyacrylonitrile in order to prepare fabrics having increased wear resistance." We take this statement to indicate that the board found

the affidavit insufficient because it did not show the claimed blends to be superior to *all* of the blends disclosed by Economy.

### Appellant's Arguments

Appellant finds several errors by the board. First, it is alleged that the board erred in equating the problem of melt-drip discussed by Economy with the problem of fabric break-open solved by appellant. In addition, appellant alleges that the board ignored the fact that appellant's method of blending fibers is critical by finding it equivalent to other methods discussed in Economy, who also discussed appellant's blending method.

Appellant also alleged error in the board's use of Economy because some selections other than Economy's preferred embodiments must be used to render the claimed invention obvious, i. e., weight percent of phenolic fibers used in the blend, the choice of staple versus continuous fibers, and the blending method.

Appellant takes issue with the board's conclusion that appellant's Rule 132 affidavit is insufficient to overcome the prima facie case of obviousness. More particularly, appellant finds unjustified the board's conclusion that the affidavit does not show unexpected results. He alleges that the affidavit shows that different results are obtained where a non-A fiber is used than when an A-fiber is used, contending that this showing was the very purpose of the affidavit. Appellant contends that the affidavit demonstrates unexpected results obtained when the claimed blend is used because of the much larger improvement in flame strength and fabric break-open time.

Finally, appellant contends that the examples given in the specification do show an unexpected result. He disagrees with the conclusion of the board that the test results are defective, and states that the purpose of the tests was to show the "glue effect" provided by the A-fibers.

### OPINION

At the outset, we note that appellant has chosen not to argue separately the patenta-

bility of each of the rejected claims. Therefore, dependent claims 2, 3, and 6 will stand or fall with claim 1. *See In re Hellsund,* 474 F.2d 1307, 59 CCPA 1382, 177 USPQ 170 (1973); *In re Herbert,* 461 F.2d 1390, 59 CCPA 1091, 174 USPQ 259 (1972).

We affirm the rejections because we find that the claimed blends are prima facie obvious over the blends disclosed and suggested by Economy, and that appellant's arguments and Rule 132 affidavit are insufficient to convince us otherwise.

One of ordinary skill in the art, having knowledge of the Economy disclosure, would be aware that a flame-resistant fabric could be produced from a blend of staple phenolic and polyamide fibers. Appellant admits that polyamide fibers are suitable A-fibers and that phenolic fibers are suitable B-fibers. Although Economy does not disclose a blend comprising the fiber proportions recited in the claims, we find ample suggestion that less than the 35% by weight of B-fibers preferred by Economy can be successfully used. Economy notes that the amount of other fabric to be blended with the phenolic fiber will sometimes depend on factors such as comfort and wear resistance. This consideration, when read with the suggestion that "Even small percentages of phenolic fiber will eliminate the dripping of molten polymer encountered in the burning of some fabrics," provides sufficient motivation for one skilled in the art to produce the claimed blends, especially when employing a fiber, such as the polyamide, which is known to melt. Under 35 U.S.C. § 103, a reference must be considered not only for what it expressly teaches, but also for what it fairly suggests. *In re Lamberti,* 545 F.2d 747, 192 USPQ 278 (Cust. & Pat. App. 1976); *In re Simon,* 461 F.2d 1387, 59 CCPA 1140, 174 USPQ 114 (1972). In response to the argument that this choice, as well as other choices which must be made from among the disclosures of the reference, is made from other than the preferred embodiments disclosed by Economy, we reiterate that "all disclosures of the prior art, including unpreferred embodiments, must be considered" in determining obviousness. *In re Lamberti,* supra,

545 F.2d at 750, 192 USPQ at 280; *accord, In re Mills,* 470 F.2d 649, 176 USPQ 196 (Cust. & Pat. App. 1972).

We do not agree with appellant's assertion that the problem of melt-drip discussed by Economy is not the same as the problem of fabric break-open dealt with by appellant. The solicitor correctly points out that appellant and Economy are using different language to express the same concept. Economy's teaching that "even though the polyamides have a tendency to melt, the structure provided by the phenolic fibers will retain the melt in place until it chars," fairly conveys the idea that the fabric retains a significant portion of its structural integrity when it is subjected to an intense thermal flux. Appellant's teaching that the melting A-fibers act as a "glue" is equally applicable to the phenolic/polyamide blend suggested by Economy.

The board correctly declined to accept the data provided by appellant's test results as persuasive of *unexpected* results. The materially-altered fabric obtained by dissolving away the A-fiber component of the test sample cannot be used in comparison with unaltered samples. While the strengths observed for the unaltered fabric may indeed reflect a "glue" effect produced by the A-fiber component, the low strengths observed for the altered fabric are undoubtedly influenced by the fact that significant portions of the fabric mass are dissolved away with the result that the remaining fibers constitute a much more loosely-woven structure.

Finally, with respect to the Rule 132 affidavit, we have considered it, but, like the board, we do not think it sufficient to establish patentability of the rejected claims. While we do not doubt that the claimed blends do exhibit a marked degree of superiority over the cotton blend, there is no evidence that the claimed blend exhibits any unexpected superiority over the phenolic/polyamide blend suggested by Economy, on which the claims were rejected. A Rule 132 affidavit, to be effective, must compare the claimed subject matter with the closest prior art. *See In re Wright,* 569 F.2d 1124, 193 USPQ 332 (Cust. & Pat. App. 1977). In

this case, the closest prior art is the phenolic/polyamide blend suggested by Economy, and, absent a showing that the unexpected superiority is due to the fiber percentages recited in the claims (that is, a showing that the percentages are critical to achieving the unexpected results), the prima facie presumption that the claimed blends and the reference blends are patentably indistinct must stand.* In addition, appellant argues that the affidavit was submitted to show "that the same results are not obtained when a non-A-fiber mentioned by Economy et al. (column 2, line 23), cotton, is used instead of an A-fiber according to the invention." Such a showing is, of course, wholly insufficient to distinguish over a reference which does suggest the use of A-fibers (the advantageous properties of which were disclosed, supra) together with B-fibers in a fabric blend. Viewed in this light, the affidavit does not even address the thrust of the rejection. Thus, the prima facie case of obviousness stands unrebutted.

For the foregoing reasons, the rejection of claims 1, 2, 3, and 6 is *affirmed*.

*AFFIRMED*.

Markey, C. J., dissented.

---

* We agree with the solicitor that as far as appellant's tests are concerned, the resultant data indicates that there is an approximately linear relationship between the increasing flame strength and increasing amounts of B-fiber.

Hence, it is all the more incumbent upon appellant to furnish evidence of unexpected results based upon the fiber percentages recited in the claims. This, as we have noted, the affidavit fails to do.