54 CCPA

**Application of Roy A. GROUT.**

**Patent Appeal No. 7765.**

United States Court of Customs and Patent Appeals.

May 25, 1967.

Moore & Hall, Robert R. Priddy, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges.

SMITH, Judge.

The examiner's rejection of claims 1, 2 and 3 of appellant's application [1] for "Honeycomb Foundation Supporting Means" under 35 U.S.C. § 103 was affirmed by the Board of Appeals. The invention in issue is adequately set forth in appealed claim 1 concerning which appellant states:

> * * * For purposes of this appeal only, no distinctions between the claims will be argued, and claim 1 may be taken as representative of all three claims.

Claim 1 is as follows:

> 1. In a comb foundation support for a beehive, a substantially rectangular shaped composition frame including vertical side members and upper and lower horizontal members, the upper horizontal member having a longitudinal slot formed therein, said slot containing the upper longitudinal edge of a foundation web and an elongated metallic strip, said metallic strip comprising at least two leg sections which diverge outwardly from a common point of attachment, and said legs being in a compressed condition in said slot so as to exert an outward pressure toward the sides of said slot, whereby said foundation web is securely held within said slot.

The references admittedly do not describe the structure as claimed in claim 1 but it is the position of the Patent Office that considering appellant's claimed invention as a whole, it would have been obvious to one of ordinary skill in the art. The references are:

| | | |
|---|---|---|
| Palmer | 886,400 | May 5, 1908 |
| Hartman | 1,411,094 | Mar. 28, 1922 |
| Andersen (French) | 1,245,940 | Oct. 3, 1960 |

The examiner's answer summarizes the teachings of the references as follows:

> * * * The Hartman patent shows in a comb foundation support for a beehive, a substantially rectangular shaped frame including vertical side members 2 and upper and lower horizontal members 1, 3, the upper horizontal member having a longitudinal slot 7 therein, said slot containing the upper longitudinal edge of a foundation web 12 and compressible means 8, 17 acting to hold the web in the slot. The patent to Palmer and to Andersen show the use of an elongated compressible resilient strip having outwardly diverging leg sections mounted in a slot for fastening a web or sheet of material in the slot. The Andersen patent shows further the provision of a flat lip portion 12 on one of the leg sections which lip portion extends outside of said slot. It would be obvious to substitute the fastening strip 12 of Palmer or 9 of Andersen for the partition 8 and wedge 17 of the Hartman structure.

Appellant's position, as summarized in his brief, is:

> It is applicant's position that this invention pertains to the beekeeping art; that the secondary references pertain

to different arts; that the problems of the beekeeping art differ from those of such other arts; and that the primary reference contains no suggestion, expressed or implied, which would lead a person of ordinary skill in the beekeeping art to resort to such other arts for a solution to the various problems solved by the present invention; wherefore, it would not have been obvious to a person of ordinary skill in the beekeeping art in 1961 to combine the teachings of the secondary references with those of the primary reference as the Board and Examiner have * * *. A *first issue* therefore, is whether the Board was correct in upholding rejections based on combinations of references that are from different arts and that fail to contain any suggestion that it would be desirable to combine them.

The opinion of the board expresses the view that:

We are not impressed by appellant's contentions to the effect that Palmer and Andersen relate to nonanalogous art. In seeking to develop a means for retaining a generally sheet-like member in a groove, as a component of a combination as claimed including such groove, we think that appellant would be charged with knowledge of those environments where analogous retaining expedients would be expected to exist. The patents to Palmer and Andersen, in our opinion, represent such environments, and in this sense they may not be ignored. In re O'Connor, 34 CCPA 1055; 73 USPQ 433; 603 O.G. 194; 161 F.2d 221; 1947 C.D. 389. In re Mariani, 37 CCPA 740; 83 USPQ 308; 631 O.G. 613; 177 F. 2d 293; 1950 C.D. 61.

Two aspects of the requirements of section 103 are presented for our consideration: first, what is the invention as a whole for which the patent is sought; and second, who is the person of ordinary skill in this art, a beekeeper or a manufacturer of beekeeping supplies?

In considering these aspects of section 103 in the order stated, we first turn to the appealed claims to determine precisely what is claimed as the invention for which a patent is sought. An analysis of claim 1 in the light of the cited prior art discloses that all aspects of the "comb foundation support for a beehive" are shown in the Hartman reference except for the specific retaining means for holding the foundation web in the slot in the upper horizontal member of the frame. The retaining means, in the language of claim 1, comprises:

* * * an elongated metallic strip, said metallic strip comprising at least two leg sections which diverge outwardly from a common point of attachment, and said legs being in a compressed condition in said slot so as to exert an outward pressure toward the sides of said slot, whereby said foundation web is securely held within said slot.

This analysis accords with the statement in appellant's specification that:

This invention generally relates to honeycomb foundation supporting means. More particularly this invention relates to novel means for securing foundation webs within honeycomb foundation frames.

Thus the invention may be described as fastening means.

■ While the addition of a new element to an otherwise old combination may create a new combination, this factor per se does not eliminate the requirement of 35 U.S.C. § 103 that such a new combination is unpatentable unless the invention as a whole was unobvious to one of ordinary skill in the art at the time it was made.

This brings us to the second aspect, what skills may we attribute to the person of ordinary skill in this art? It is appellant's position that since the combination of elements claimed is to be used by beekeepers that it is to this group we must turn to ascertain what would have been obvious to them. After discussing the disclosures of the prior

art, appellant states the position in his brief that:

> The preceding discussion calls attention to a variety of facts, circumstances and reasons which *repel* the inference that it would have been obvious in 1961 for a man of ordinary skill in the beekeeping art to turn to the window shade roller art or Andersen's polymer film stretching device for ways and means of improving beehive components. Such facts, circumstances and reasons show the difference in problems and objectives in the several arts differ from one another and how the deformative measures inhering in the arts of the secondary references would be completely unsuitable for application to bees' wax foundation webs which are commonly used in the invention. * * *

■■■ Considering all the papers of record, we are not convinced that the "person having ordinary skill in the art to which said subject matter pertains," section 103, is exemplified by a beekeeper. Appellant's invention relates to novel fastening means used in beehives. It is alleged that a problem existed in the support of honeycomb foundations which appellant solved. While this *problem* would be encountered by a *beekeeper*, we think the problem naturally calls for the talents of one skilled in the art of fasteners. Under section 103 we must look to the person of ordinary skill in the art to which the invention pertains, not those who may use the invention. We are satisfied the references relied on by the Patent Office may be properly considered under section 103.

There is of record the affidavit of one Charles C. Dadant which establishes that the metallic strips of claim 1 had been in production by Dadant and Sons since 1961 and sets forth the sales volume of such strips by periods extending from January 1961 through the projected sales volume for the period ending August 31, 1964.

■■■ Evidence of commercial success is a "secondary consideration" which may have "relevancy" as an indicia of obviousness or unobviousness, Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The Supreme Court stated, 383 U.S. at 17–18, 86 S.Ct. at 694:

> * * * Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. * * *

The court commented further, in considering the arguments of Cook Chemical Co., concerning these secondary considerations, 383 U.S. at 36, 86 S.Ct. at 703:

> * * * They may also serve to "guard against slipping into use of hindsight," Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., [6 Cir.] 332 F.2d 406, 412 (1964) [cert. denied 379 U.S. 888, [85 S.Ct. 160, 13 L.Ed.2d 93], and to resist the temptation to read into the prior art the teachings of the invention in issue.

However, these factors do not, in the circumstances of this case, tip the scales of patentability. * * *

Upon consideration of the affidavit allegedly establishing commercial success, we find it inadequate as proof that this commercial success is attributable to the claimed invention.[2]

---

2. After setting forth figures, the affidavit states, in part:

That prior to the commercial introduction of the metal strips set forth in Claims 1–3 there was a longfelt need by the bee industry for an item which would do this job * * *.

That in my opinion the facts clearly support the conclusion of *great and substantially immediate commercial success* of the structure defined in Claims 1–3.

██ As recognized in *Graham,* 383 U.S. at 18, 86 S.Ct. at 694, there are difficulties in applying the nonobviousness test of section 103:

This is not to say, however, that there will not be difficulties in applying the nonobviousness test. What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context. The difficulties, however, are comparable to those encountered daily by the courts in such frames of reference as negligence and scienter, and should be amenable to a case-by-case development. * * *

We think a person desiring to fasten a honeycomb foundation web to a frame is properly charged with the knowledge existing in the fastening art. Like the board,

* * * we are particularly impressed with the delineation by Palmer of the conventionality of elongated metallic strips of the general type here involved, for analogous holding purposes. And in this respect, we note that it is unequivocally stated * * that the sheet material 11 thereof is "clamped or pinched" in the groove by the metal strip.

The decision of the board is therefore affirmed.

Affirmed.

RICH, J., concurs in the result.

WORLEY, C. J., did not participate.