Marvin I. MAY, Plaintiff-Appellant,

v.

AMERICAN SOUTHWEST WATERBED DISTRIBUTORS, INC., a Texas Corporation and Frank Lucas, an Individual, Defendants-Appellees.

No. 82–1302.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1983.

Rehearing and Rehearing En Banc Denied Oct. 24, 1983.

John K. DeLay, Jr., Dallas, Tex., Thomas D. Phillips, Joseph H. Golant, Los Angeles, Cal., for plaintiff-appellant.

Hubbard, Thurman, Turner, Tucker & Glaser, Robert W. Turner, Kenneth R. Glaser, Dallas, Tex., for defendants-appellees.

Before GEE, GARZA and TATE, Circuit Judges.

PER CURIAM:

Having read the record, the briefs of the parties, and after hearing oral argument, we are convinced that the court below was correct in deciding that the device in the patent in question was not patentable because of obviousness as a matter of law. Therefore, the court below is affirmed on the basis of its opinion dated the 13th day of May 1982, attached hereto as Appendix "A".

AFFIRMED.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| MARVIN I. MAY,<br> Plaintiff<br><br>V.<br><br>AMERICAN SOUTHWEST WATERBED<br>DISTRIBUTORS, INC., and FRANK<br>LUCAS,<br> Defendants | CIVIL ACTION NO. CA-3-80-1075-D |

### ORDER

Came on for consideration before the Court the motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, filed by defendants American Southwest Waterbed Distributors, Inc., and Frank Lucas (collectively Lucas), and the motion for entry of judgment filed by Marvin I. May (May), plaintiff. Having considered the motions, briefs of the parties, and the record in this action, the Court is of the opinion that the motion for judgment notwithstanding the verdict should be granted and the motion for entry of judgment should be denied.

This action is over the validity of patent No. 3,973,282 (the '282 patent) issued to May and covering a water bed liner holder. At trial, Lucas admitted that his device infringed the '282 patent claims in issue, but he has continued to press his contention that the '282 patent is invalid because the patented device would have been obvious to one skilled in the art.

### When It Rains ...

A principal concern of the water bed industry is preventing leakage from the mattress, and containing the water should the mattress rupture. A water bed holds a

large amount of water and should the water mattress rupture, there is a likelihood of substantial water damage to other furniture as well as to the building structure. This problem was especially acute in the early years of the water bed industry. The bulk of the industry efforts were devoted to methods of assuring the integrity of the water bed mattress, and great improvements have been made, especially in the area of stronger mattress seams.

### Every Cloud Has a Silver Lining

Since there is a possibility that even the best mattress may rupture, there must be some method of containing any leakage that might occur. The usual method of containment involves a plastic liner which is attached to the inside of the water bed frame over which the water mattress is then placed. The '282 patent covers a plastic device used to hold the plastic liner near the top of the inside of the frame. There were a substantial number of methods for securing the liner to the same area of the frame in existence prior to the development of the device covered by the '282 patent. The main advantages of May's device are that it is easily installed, easy to use, and does not damage the liner. As evidenced by the substantial sales over the last six years, May's device made quite a splash in the industry.

### Is the '282 Patent Leakproof?

Under 35 U.S.C. § 282 all patents are presumed to be valid. Thus, before a patent may successfully be challenged, the statutory presumption of validity must first be overcome. In order to rebut the presumption of validity, the party seeking to torpedo the patent must show that the Patent Office failed to consider pertinent prior art at the time it made its evaluation. *Reed Tool Co. v. Dresser Industries, Inc.,* 672 F.2d 523, 526 (5th Cir.1982); *Ludlow Corp. v. Textile Rubber & Chemical Co.,* 636 F.2d 1057 (5th Cir.1981). The evidence offered must not be cumulative and must be more than a preponderance, with any doubts resolved against the attacking party. *Id.*

A determination must therefore be made as to what constitutes the "pertinent" prior art against which the obviousness *vel non* of the '282 patent is to be measured. *I.U. Technology Corp. v. Research-Cottrell, Inc.,* 641 F.2d 298, 302 (5th Cir.1981). May argues that the most pertinent prior art is the field of bedding fasteners. Lucas, in turn, contends it is the total field of clips, fasteners and holders.

To resolve this issue, the Court must look to the art within which the inventor was working at the time of the invention. *In re Application of Grout,* 377 F.2d 1019, 1021–22 (CCPA 1967). The focus of inquiry is on the problem solver and not the user of the solution; *i.e.,* it is the subject matter of the invention and not the field or industry which might thereafter have a use for the invention which must be looked to. *I.U. Technology,* 641 F.2d at 303; *Systematic Tool & Machine Co. v. Walter Kidde & Co.,* 555 F.2d 342, 349 (3d Cir.), *cert. denied,* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 128 (1977). Furthermore, if the elements and purposes of one art are so related and are so similar to those of another art as to make an appeal to one skilled in such art, the two arts are analogous, and both arts must be looked to in determining the field of art to which the patent pertains. *I.U. Technology,* 641 F.2d at 304–05; *Cathodic Protection Service v. American Smelting & Refining Co.,* 594 F.2d 499, 505–06 (5th Cir.), *cert. denied,* 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 378 (1979); *Aerotec Industries of Calif. v. Pacific Scientific Co.,* 381 F.2d 795, 802 (9th Cir.1967), *cert. denied,* 389 U.S. 1049, 88 S.Ct. 788, 19 L.Ed.2d 843 (1968).

Applying these principles, there can be no doubt that the field of fasteners and holders is the most pertinent prior art to which the patent pertains. May's invention relates to a means of fastening or holding a water bed liner to a water bed frame. While May claims that it solved a problem related to a bed, so that the most pertinent art should be bedding fasteners, the nature of holding a water bed liner naturally calls for the talents of one skilled in the art of

fasteners, and holders. *See In re Grout,* 377 F.2d at 1022. This conclusion is confirmed by a continuation patent application filed by May on a nearly identical water bed liner holder in which the device is described as a providing simple holder for mounting valances, ruffles, draperies, window treatments or to holding memos, notes, or other pieces of paper, as well as holding water bed liners.

Having determined that the sea from which pertinent prior art is to be fished is fasteners and holders, it remains to be determined if the Patent Officer failed to examine pertinent prior art sufficient to rebut the presumption of validity enjoyed by the '282 patent. Lucas cites to eight patent references in the record which were not considered by the patent examiner.[1] These patent references disclose clip-type holders, which in conjunction disclose all of the significant features claims in the '282 patent. In addition, a picnic table cloth clip existing prior to the '282 patent was introduced at trial. (Plaintiff's Exhibit No. 97) This clip is made of plastic, capable of being elongated, with a bottom portion to be secured to the table, a center curved portion with space for storage, and an upper portion which presses against the table to keep the table cloth in place.

■ In contrast, the patent examiner did not examine any prior art references involving resilient, clip-type fasteners, designed to releasably retain a flexible object against a support surface, although other devices for holding a water bed liner were examined, including liner tape, tack strips, t-molding, cap rails, and a matchbook-like holder. Because the patent examiner failed to consider pertinent prior art, and the prior art that was considered was of a different kind and substantially less relevant, the presumption of validity in this case must be regarded as non-existent.

1. *Brown* 951,052; *Concannon* 2,400,058; *Brewster* 769,588; *Burke* 1,154,371; *Fricker* 1,696,908; *Simon* 841,589; *Kost* 2,154,046; and *Borisof* 3,309,052.

2. In *Control Components,* Judge Rubin filed an opinion concurring in the result of the finding that the patent was non-obvious, but disagreeing in the approach taken by the majority in

*Obviousness*

■ The ultimate question of patent validity is one of law, but the determination of obviousness depends upon three factual inquiries. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). The factual inquiries are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the art. *Id.; Reed Tool Co.,* 672 F.2d at 527. In *Lear Inc. v. Adkins,* 395 U.S. 653, 676, 89 S.Ct. 1902, 1914, 23 L.Ed.2d 610 (1969), the Supreme Court referred to the test in *Graham* as a "demanding standard of invention." *Lear* and its progeny reiterate the proposition that there is an important public interest in the elimination of specious patents. *See Id.* at 676, 89 S.Ct. at 1914; *Steelcase, Inc. v. Delwood Furniture Co.,* 578 F.2d 74, 76 (5th Cir.1978).

■ The jury in this action found that the patent was not obvious. In making this determination, the jury was instructed to make the following determinations:

(1) The field of art to which the patent pertains;

(2) the level of ordinary skill of those who worked in the field of art at the time of the invention;

(3) the difference between the claimed invention and prior art; and

(4) then, whether the claimed invention would have been obvious to one of ordinary skill in the art to which the patent pertains at the time the invention was made.

The factual determination required by *Graham* are implicit in the jury's verdict. *Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763, 767 (5th Cir.1980). It is presumed that the disputed matters of fact have been resolved favorably to the prevailing party in accordance with the instructions given to the jury. *Id.*[2] The implicit factual deter-

their apparent approval of a general jury verdict supported by implicit factual findings. *I.U. Technology,* decided after *Control Components,* also involved a general jury verdict (although of obviousness), but the approach taken by that panel in that case differed substantially from that in *Control Components.* While acknowledging that the ultimate question of validity

minations must be upheld if substantial evidence exists to support them. *Id.; Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc). The Court then determines the ultimate question of patent validity on the results of the factual findings that are supported by substantial evidence. *Control Components,* 609 F.2d at 767; *Swofford v. B & W, Inc.,* 395 F.2d 362, 368 (5th Cir.1968).

 May asserts that the basis of Lucas' entire argument that the device is obvious is false because Lucas has not produced a prior art reference that shows all of the elements of May's device performing the same functions in the same way to achieve the same results. This argument has no merit. A device may be obvious even though the invention is not identically disclosed in the prior art, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made

to a person having ordinary skill in the art to which the subject matter pertains. *Robbins Co. v. Dresser Industries, Inc.,* 554 F.2d 1289, 1290 (5th Cir.1977). The mere fact that the device was the first to incorporate all of the features that made it a commercial success does not mean it was patentable as beyond the obvious. *Steelcase, Inc.,* 578 F.2d at 80. Similarly, patentability cannot rest on the discovery of a new use for a device with structural elements substantially similar to ones well known in the art, when the device could be easily put to such use by reason of its intrinsic properties. *Gould-National Batteries, Inc. v. Gulton Industries, Inc.,* 361 F.2d 912, 914 (3d Cir. 1966). Obviousness, then, can be found from the teachings of the whole of the prior art and the improvements on those teachings that would be obvious to the hypothetical person of ordinary skill in that art. *Steelcase, Inc.,* 578 F.2d at 79.

Only claims 1, 2, 4, 5, 7, 10, 11 and 12 of May's patent are in issue here.[3] The scope

rests on the tripartite factual inquiries of *Graham,* the focus was on the determinations made by the trial judge. *See, e.g., I.U. Technology,* 641 F.2d at 305–306. No reference was made to implicit jury findings to be sustained if supported by substantial evidence. Instead, the trial judge's findings were apparently reviewed under the clearly erroneous standard. *Id.* at 306. Because there is clearly a factual component involved in this action, and this is a motion for judgment n.o.v., the Court will adhere to the rule of *Control Components* that no implied jury finding be disregarded if supported by substantial evidence. No such evidence is present in this action.

3. These claims provide:

1. A liner holder to be attached to a frame of a water bed along its interior surface for restraining a waterproof liner placed within the interior of the frame, the liner forming with the frame a safety reservoir should the water bed rupture, the holder comprising:
 a base of resilient material, said base being bowed to form with said frame a space for storage of a portion of said liner.
 a leg portion connected to said base for bearing against said frame secure said holder in place; and
 a head portion connected to said base for bearing against said frame, with said liner being receivable between said head portion and said frame.

2. A holder as claimed in claim 1 wherein said base, said leg portion and said head

portion are integral and said holder is elongated.

4. A holder as claimed in claim 2 wherein said head portion is placed in an overstressed condition when said holder is properly located relative to the frame for creating a biasing force against said frame.

5. A holder as claimed in claim 2 wherein said leg is vertically disposed.

7. A holder as claimed in claim 2 including fastening means cooperating with said leg portion for connecting said frame and said holder.

10. A liner restrainer for use with a water bed liner to secure said liner in a desired position with a frame, said restrainer comprising:
 a resilient element having a bottom portion for positioning said restrainer, a top portion biased to apply a force against said liner and said frame, and a central portion outwardly extending to provide a space between the central portion and said frame.

11. A liner restrainer as claimed in claim 10 wherein said element is approximately three inches in height and said top portion is offset horizontally approximately ⅛ inch when in an operative position relative to said frame whereby said bias is achieved by said offset.

12. A liner restrainer for use with a water bed liner to secure said liner in a desired position within a frame said restrainer comprising:
 a flexible element having a bottom portion for locating said restrainer, a top portion over which said water bed liner is draped

of the inventions is defined by these claims. *Smith v. Snow,* 294 U.S. 1, 11, 55 S.Ct. 279, 283, 79 L.Ed. 721 (1934); *Arbrook, Inc. v. American Hospital Supply Corp.,* 645 F.2d 273, 276 (5th Cir.1981). Figures 1 and 2 below respectively show May's holder at-tached to the inside of the frame and a cross section of the holder showing the ar-rangement of its three major sections: the bowed base, labeled A; the leg portion, labeled B; and the head portion, labeled C.

FIG. 1.

FIG. 2

*Scope and Content of Prior Art*

The Court has already determined that the relevant prior art is the field of holders and fasteners. It would, in fact, be funda-mental error to disregard prior art in this area. *See Cathodic Protection Service,* 594 F.2d at 507; *I.U. Technology,* 641 F.2d at 304. The scope and content of this prior art

and a central portion integrally connecting said bottom and top portions, said element being placed generally upright along an in-terior surface of said frame which receives said liner within the frame while the edges of said liner extend parallel to a first side of said element loop over the top portion of said element and extend parallel to an op-posite second side of said element whereby said liner edges are held in place within the frame.

is one of the factual inquiries upon which the implicit jury finding is controlling if supported by substantial evidence.

The prior art submitted by Lucas is extremely relevant. Not only is it from the field of fasteners and holders, but it also discloses the same functional or structural features that May claims is his patent. For example, a resilient clip-type holder for releasably retaining a stack of paper against a support surface as a consequence of the biasing force of the holder is disclosed. *E.g.* the *Brown* patent. Placing a clip in an overstressed condition by building in an offset is disclosed. *E.g.* the *Brewster, Burke, Kost* and *Fricker* patents. A base of resilient material with a bowed base for storage is disclosed. *E.g.* the *Brown* patent. A leg portion connected to the base to help secure the holder in place is disclosed. *E.g.* the *Brewster* and *Simon* patents. Finally, most of the functional elements of May's patent are synthesized in the picnic table cloth clip introduced into evidence.[4] In addition, the picnic table cloth clip is made of plastic, would not rip a water bed liner, and can easily be elongated.

There is no substantial evidence justifying excluding holders and fasteners not used in conjunction with a bed. Because the patents and other prior art cited by Lucas are highly relevant, they should be included within the scope and content of the prior art.

### Differences Between the Prior Art and the Claims at Issue

█ Obviousness is established when features that distinguish the potential device from the closest prior art reference are disclosed in analogous structures in which these functions perform an identical function. *Cathodic Protection Service,* 594 F.2d at 510. More ingenuity, skill, and innovation is required of the inventor than would be expected from the ordinary mechanic acquainted with the business. *Robbins,* 554 F.2d at 1294. Once the art to which the ordinary skilled person is widened to include other resilient-type clip holders outside of bedding fasteners, it is manifest that the claims here are obvious; they simply do not describe a holder that performs functions different from those performed by the prior art. *See Cathodic Protection Service,* 594 F.2d at 511.

The differences between May's device and the prior art are minimal. *See* Note 4 and accompanying text, *supra.* Evidence in the record, especially the testimony of the expert in the field of fasteners and holders offered by Lucas, established that any differences can be attributed to the work of a skilled mechanic rather than an inventor. May simply combined mechanical principles, well known in the field and previously disclosed in the prior art, to hold a water bed liner. The use of basic engineering principles, in developing a method for holding a water bed liner, where there is no change in the respective functions of the elements of combination is the work of a skillful mechanic rather than the inventor. *Robbins,* 554 F.2d at 1295.

### Level of Ordinary Skill

█ The obviousness of the patent must be tested in the light of the hypothetical individual possessing ordinary skill in the relevant prior art. *Whitley v. Road Corp.,* 624 F.2d 698, 701 (5th Cir.1980). The

---

4. May makes much of the individual differences between the picnic table cloth holder and his device. First, he argues that there is no biased head portion. However, there is no dispute that the part of the clip opposite the leg is biased against the support surface when the table cloths inserted. Second, there is no middle bowed base. The bow, however, is not a critical feature: claim 1 provides that the base is bowed to provide space for storage of a portion of the liner. To use May's words, the picnic table cloth clip has a "large, gently curved end," which naturally creates a space for storage of excess material. Finally, May argues that there is no vertical alignment. To state the obvious, the picnic table cloth holder is made to hold a picnic table cloth; the sides of a picnic table are narrow, requiring the leg to be attached horizontally. May's clip is used to hold a water bed liner to the inside of a water bed frame. The frame is vertical, and deep enough to accommodate the holder, therefore it naturally has a vertical alignment. It can hardly be argued that this difference represents the kind of inventive innovation subject to protection under the patent laws.

level of ordinary skill in turn rests on a preliminary determination of what prior art is to be used by the hypothetical person. *Cathodic Protection Service,* 594 F.2d at 512. This preliminary determination has already been made in favor of the field of holders and fasteners. As previously mentioned, May contends that the prior art cited by Lucas is not in the pertinent prior art because it was not used in conjunction with a bed. This same argument confronted the Supreme Court in *Graham* when the patentee of a pump sprayer invention argued that a particular patent was not in the pertinent prior art because it related to containers having pouring spouts rather than pump sprayers. The Supreme Court easily disposed of this argument (and the patent) in stating that

> "[t]he problems confronting [the patent holder] and the insecticide industry were not insecticide problems; they were mechanical closure problems. Closure devices in such a closely related art as pouring spouts for liquid containers are at the very least pertinent references."

*Graham,* 383 U.S. at 35, 86 S.Ct. at 703.

■ The hypothetical person is a mechanically skilled individual familiar with the design of devices in the industry and the basic mechanical and engineering principles underlying those devices. *See Cathodic Protection Services,* 594 F.2d at 512–13; *Robbins,* 554 F.2d at 1295. This theoretical person of ordinary skill is also charged with knowledge of all that the prior art disclosed at the time of the invention, regardless of whether persons of ordinary skill in the field, or he himself, or anyone else, actually possessed such all-encompassing familiarity with prior disclosures. *Cool-Fin Electronic Corp. v. International Electronic Research Corp.,* 491 F.2d 660 (9th Cir.1974). In addition, it is not merely what prior art naturally teaches, but what it suggests to one of ordinary skill in the art at the time of invention. *Application of Lamberti,* 545 F.2d 747 (CCPA 1976). *See Reed Tool Co.,* 672 F.2d at 528.

Applying these principles, there can be no doubt that the subject of the '282 patent would have been obvious to one of ordinary skill in the art. All of the features are disclosed in the prior art or would be readily apparent from an examination of the prior art by one of ordinary skill in the art to which the patent pertains.

*Secondary Considerations*

Finally, May urges that secondary considerations such as commercial success, long felt but unsolved needs, and the failure of others to invent a similar water bed holder indicate that his device was nonobvious. The evidence, however, does not support this contention.

Prior to 1975, the year in which May developed his device, there was no widespread, long felt need for such a liner holder. May testified at his deposition that prior to 1975 the water bed industry as a whole thought that the liner retention problem had been solved and that probably 99% of the people thought that tack stripping was a sufficient solution. Similarly, Lucas' expert in the water bed industry testified that prior to 1975, 95% of the people in the industry were satisfied with the then existing methods of fastening water bed liners to the frames and that there was no demand for innovation in the area. This evidence demonstrates that there was no long felt need in the water bed industry for a solution to the problem of fastening the water bed liner, and also helps to explain why no one else developed such a liner holder from the prior art: very few people were looking for such a device. No matter how much acclaim a device may later receive as an innovation, if the elements comprising the invention are disclosed in the prior art, it is irrelevant that no one previously availed himself of the knowledge. *I.U. Technology,* 641 F.2d at 306 n. 8.

■ Commercial success is relevant to the question of nonobviousness, but will not alone satisfy the requirement of nonobviousness. *Huron Machine Products, Inc. v. A. & E. Warbern, Inc.,* 615 F.2d 222, 225 (5th Cir.1980). Where analysis of the three major *Graham* factors unequivocally demonstrate that the design in question was obvious before it was patented, commercial

success does not impact on the resolution of the issue. *Whitley,* 624 F.2d at 701.

### Conclusion

■ May's claim of damages for infringement floats on the validity of his patent. The Court has determined that under the evidence in this action and the applicable legal principles May's patent fails to hold water, because the patented device would have been obvious to an individual with ordinary skill in the art to which the patent pertains, even though the device effectively serves as a water bed liner holder. Finally, the Court notes that during the trial of this action, defense counsel on numerous occasions referred the Court and jury to the clip attached to ball point pen he carried. Such clips have been common features on many pens for many years and, as is common knowledge, are used to hold the pen to some surface, normally a pocket. The Court takes judicial notice that if you take such a pen with an attached clip, turn the pen upside down, and then elongate the clip horizontally, May's device is revealed. It only remains to attach this clip to the inside of a water bed frame to duplicate May's device. The motion for judgment notwithstanding the verdict should be granted.

Lucas has requested that he be awarded attorney's fees pursuant to 35 U.S.C. § 285. The Court does not find this to be such an exceptional case that an award of attorney's fees is justified. Therefore, the request for attorney's fees should be denied.

Accordingly, it is ORDERED that:

(1) the motion for judgment notwithstanding the verdict filed by Lucas be granted and a judgment entered in accordance with this Order;

(2) the motion for entry of judgment filed by May be denied;

(3) the request for attorney's fees pursuant to 35 U.S.C. § 285 filed by Lucas be denied.

TATE, Circuit Judge, dissenting:

I respectfully dissent. By virtue of the implicit factual findings made by the properly-instructed jury in determining the issue of obviousness adversely to the defendants, *Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763, 767–68 (5th Cir.), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 589, 66 L.Ed.2d 484 (1980)—findings supported by substantial evidence sufficient to withstand a motion for judgment notwithstanding the jury verdict, *Boeing v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc)—, the district court erred in overturning the special verdict of the jury of nonobviousness.

While the issue of obviousness is a question of law, the district judge found as a subsidiary fact—in the face of conflicting evidence on the issue, and despite an instruction under which the jury was required to determine the issue before accepting or rejecting the defense of obviousness—that the most pertinent prior art (examination of which was required by patent examiners prior to issuance of a valid patent) was that of "the field of fasteners and holders"—not the field of "bedding fasteners" (the field upon which the patent examiners relied in issuing the patent). As we noted in *Control Components, supra,* the underlying *factual* inquiry in determining the *law* issue of obviousness includes "[p]reliminary *factual* determinations ... on the scope and content of the prior art and on the difference between the prior art and the claims at issue." 669 F.2d at 767 (emphasis added). It is only "*then*" that the trial judge "determines whether the improvement would have been obvious to a person having ordinary skill in the art." *Id.* (emphasis supplied). See also *Graham v. John Deere Company of Kansas City,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966). The district court could not disturb the jury finding of obviousness without rejecting the subsidiary pertinent prior art factual determination upon which the jury verdict of obviousness was founded.

The error of the majority in affirming the grant of judgment notwithstanding the verdict is both obvious and patent. The district court made a factual finding as to the most pertinent prior art contrary to that made by the jury, which had been properly instructed (without objection from either party) as to the criteria as to this issue and which had been instructed to de-

termine this factual issue in deciding (by response to the special interrogatory) whether or not the patented device was obvious. R.IX, pp. 679, 692. The issue had been hotly contested before the trial judge. Substantial evidence in the *Boeing v. Shipman* sense supports this factual component of the jury verdict.

The plaintiff May himself testified that the field of the most pertinent prior art was in the field of bedding fasteners. His testimony was opposed by that of the defendant Lucas and two experts who testified on behalf of the defendants. I am unable to say that the plaintiff's own testimony, together with the jury's credibility option to reject the testimony of the defendant and his experts in the light of their financial self-interest in so testifying, as well as of the substantial testimony of peculiar problems in the water-bed fastener field (and of the long unsuccessful efforts, both by the defendant and others in the field to solve them, until the plaintiff's successful patented device), did not constitute substantial evidence [1]—"evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment" might conclude is sufficient to support a factual finding, *Boeing v. Shipman, supra,* 411 F.2d at 374—as not only to justify submission of this factual issue to the jury, but also to enable a jury verdict so founded to surmount a motion for judgment notwithstanding the verdict, *id.*

I therefore respectfully dissent.

---

1. The focus of the inquiry to determine the most pertinent prior art is on the art in which the "problem solvers" were engaged, rather than the "users" of the solution. *I.U. Technology Corporation v. Research-Cottrell, Inc.,* 641 F.2d 298, 303 (5th Cir.1981). Moreover, analogous arts are to be included within the meaning of "prior art." I.U. Technology Corporation, *supra,* 641 F.2d at 304. The inquiry, however, is clearly factual. *Graham* and *Control Components, supra.*

It is difficult for me to see how trial or appellate judges—"users" at most (if that) of water beds—may determine as a matter of law the most pertinent prior art, when the actual problem solvers testified in this case to opposing effect as to this factual issue.